Joseph J. RAGOSTA, Sr.

v.

**STATE OF VERMONT, Frances D. Ragosta, Glen Morgan, Peter Langrock, Tom Hayes, Albert W. Barney, Rudolph J. Daley, Robert W. Larrow, Franklin S. Billings, Jr. and William C. Hill.**

Civ. A. No. 80–189.

United States District Court, D. Vermont.

Dec. 11, 1981.

---

Joseph J. Ragosta, Sr., pro se, and Peter Diamondstone, Brattleboro, Vt., for plaintiff.

William Griffin, Asst. Atty. Gen., State of Vt., Montpelier, Vt., for defendants State of Vt., Barney, Daley, Larrow, Billings and Hill.

Donald R. Powers, Brattleboro, Vt., for defendant Ragosta.

Harold Berger, Ryan, Smith & Carbine, Rutland, Vt., for defendant Morgan.

John Faignant, Miller, Norton & Cleary, Rutland, Vt., for defendant Langrock.

Honorable Thomas L. Hayes, Burlington, Vt., pro se.

## OPINION AND ORDER

COFFRIN, District Judge.

This is a civil action brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 for the alleged violation of plaintiff's constitutional rights. The action arises out of certain aspects of an action for divorce filed against plaintiff in the Vermont Superior Court by defendant Frances Ragosta (Frances). This court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1343. In his original complaint, plaintiff asserts claims against Frances and against the attorneys and the members of the Vermont bench involved in various stages of the divorce proceedings. Plaintiff now seeks to amend his complaint to include additional claims against two more Vermont judges. Plaintiff also seeks a temporary restraining order enjoining enforcement of an interim order of the Vermont Superior Court ordering plaintiff to leave the home in which he and Frances appear to have lived during the last years of their marriage.

The defendants named in the original complaint have all moved to dismiss; for purposes of these motions, we will accept as true the allegations set out in the complaint. For the reasons stated below, we grant defendants' motions to dismiss and deny plaintiff's motion to amend by filing a supplemental complaint. In the absence of a viable action, we also deny plaintiff's motion for a temporary restraining order.

The record before us today does not contain a very coherent account of the divorce proceedings. The complaint indicates that Frances filed a divorce action against plaintiff in Vermont Superior Court on the ground of six months of separation and on the alternative ground of intolerable severity. Defendant Glen Morgan represented Frances in the divorce suit; defendant Peter Langrock represented plaintiff. Defendant Tom Hayes, a Vermont Superior Court judge, presided over the case. Fol-

lowing an initial hearing which plaintiff claims was defective because he did not receive an adequate opportunity to participate, defendant Hayes ordered plaintiff to vacate the marital home. The period of separation between plaintiff and Frances apparently began to run at the time plaintiff left the home pursuant to the court order. Plaintiff attempted to secure emergency relief from the Vermont Supreme Court, but defendants Barney, Daley, Larrow, Billings, and Hill, all justices of the Vermont Supreme Court, denied his request. This court does not know whether the final hearing has been held in the state divorce action.[1]

### Discussion

In his original complaint, plaintiff raises several distinct claims of violations of his constitutional rights. First, he asserts that the divorce complaint failed to state with sufficient particularity the factual basis of the claim in violation of Rule 80 of the Vermont Rules of Civil Procedure and the due process clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also claims that the court created the ground of six months separation by ordering plaintiff to leave the marital home. In addition, plaintiff contends that Frances' claim of intolerable severity was without any factual basis. In plaintiff's view, the acts of every defendant in participating in the divorce proceeding and in denying plaintiff's request for emergency relief amount to a conspiracy to deprive plaintiff of liberty and property interests protected by the Constitution.

Although plaintiff's claim is colorful and somewhat unique (compare our recent decision in *Condosta v. Condosta,* No. 79–148 (D.Vt. May 27, 1981)), we do not consider its merits at any great length because it is immediately clear that the defendants—litigants, attorneys and judges involved in a private civil action for divorce—are not lia-

---

1. At the hearing on the motions, September 3, 1981, plaintiff, according to his counsel, was confined to a Veterans Hospital suffering from both physical and mental illnesses. It was not known whether he would be able to attend the final hearing then scheduled for October 13, 1981.

ble to plaintiff under 42 U.S.C. § 1983 even if we accept as true every allegation in the complaint.[2]

### I. Defendants' Motions to Dismiss

### A. Judicial Immunity

■ Plaintiff challenges both the conduct of defendant Hayes, the Vermont Superior Court judge who presided over at least a portion of the trial of the divorce action, and the decision of the five justices of the Vermont Supreme Court to deny plaintiff's request for emergency relief. The doctrine of judicial immunity unmistakably bars these claims. In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court held that judges are wholly immune from civil liability arising out of their judicial acts so long as they have not acted in the clear absence of all jurisdiction. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1872). In presiding over the trial of the divorce action, Judge Hayes was clearly acting within the jurisdiction conferred on the Superior Courts of Vermont by Vt.Stat.Ann. tit. 15, § 591. Section 591 provides in part that the Superior Court shall "hear and determine libels for divorce . . . and may issue process of attachment, execution and other proper process necessary for the dispatch and final determina-

tion of such causes."[3] In particular, Judge Hayes' grant of interim relief to Frances falls squarely within his broad authority to hear and determine divorce actions. Whether the decision to order plaintiff to leave the marital home was correct under the law of Vermont or indeed under the Constitution has no bearing on the defense of sovereign immunity. The only question before this court in a section 1983 action is whether Judge Hayes' interim order was one which the Vermont legislature has authorized him to issue. *Stump v. Sparkman,* 435 U.S. at 357–58, 98 S.Ct. at 1105. We grant defendants' motion to dismiss as to Judge Hayes because we are satisfied on the basis of the complaint that Judge Hayes did not step beyond the bounds of his jurisdiction in the course of the Ragosta divorce proceedings. *See Arnold v. Bostick,* 339 F.2d 879 (9th Cir.1964), *cert. denied,* 382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 96 (1965); *Dotlich v. Kane,* 497 F.2d 390 (8th Cir.1974).

■ The same principles of judicial immunity also bar any damage claims against the justices of the Vermont Supreme Court. In denying plaintiff's request for extraordinary relief, they made a decision fully within their jurisdiction to grant or deny the relief. *See* Vt.R.App.P. 21. Accordingly, we grant defendants' motion to dismiss as to Justices Barney, Daley, Larrow, Billings, and Hill.[4]

---

**2.** Although plaintiff also asserts claims under 42 U.S.C. §§ 1985 and 1986, we direct our opinion towards his claims under 42 U.S.C. § 1983. It is possible that plaintiff's allegations that the Vermont divorce laws treat men more harshly than women rise to the level of a claim of invidiously discriminatory class-based animus required for a determination of liability under sections 1985 and 1986. *See Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063 (D.Me.1977). Both sections 1985 and 1986, however, require concrete allegations of a conspiracy to defeat plaintiff's equal protection rights. In this case, plaintiff has advanced only conclusory claims of conspiracy without any allegations of a common motive, design, or purpose. In the absence of a single specific charge of illicit cooperation among the defendants, we have little choice except to dismiss plaintiff's claims under sections 1985 and 1986. *See Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir.1977).

**3.** Plaintiff's reliance on *Gerdel v. Gerdel,* 132 Vt. 58, 313 A.2d 8 (1973) as support for his position that the Supreme Court lacked subject matter jurisdiction over the divorce action because no factual basis was alleged in the libel as required by Vt.R.Civ.P. 80(b) is misplaced. *Gerdel* held that the requirement of 15 V.S.A. § 593 that divorce actions be commenced in the County in which the parties or one of them resides is a non-waivable jurisdictional requirement as opposed to a waivable venue requirement. The reasoning in that case in no way can be applied by analogy or otherwise to diminish the general grant of jurisdiction over divorce matters conferred upon the Superior Courts by the provisions of 15 V.S.A. § 591.

**4.** Plaintiff's counsel asserted for the first time at the hearing that even if the named judge and justices are protected from liability in a civil damage action they enjoy no such protection concerning a request for injunctive relief. The

## B. State of Vermont's Eleventh Amendment Immunity

 Plaintiff has also named the State of Vermont as a defendant. In the absence of legislative consent to suit, the Eleventh Amendment bars claims for damages brought directly against the states.[5] Plaintiff contends that the existence of an insurance policy purchased by the State of Vermont to pay claims arising (as the complaint puts it) out of "wrongful acts committed by State officials to the injury of a person or persons" amounts to a waiver of immunity under the Eleventh Amendment. Assuming that such a policy exists, it does not rise to the level of a waiver of immunity. In Vt.Stat.Ann. tit. 3, §§ 1101–1104 Vermont has obligated itself to defend and indemnify state employees in some civil and criminal actions arising out of activities of the employee undertaken in the performance of official duties. Any right of indemnity which a state employee might have against the state following a judgment against the employee in his or her personal capacity is distinct, however, from a claim brought directly against the state. In providing for the payment of certain judgments rendered against state employees, the Vermont legislature expressly provided that "[n]othing in this section shall be deemed to waive the sovereign immunity of the state with respect to a claim covered under this section . . . ." Vt.Stat.Ann. tit. 3, § 1103(a). The alleged insurance policy and the statutory provisions for indemnification of state employees, therefore, have no bearing on plaintiff's claim against the State of Vermont and provide no substitute for a formal waiver of immunity.[6] In the absence of such a waiver, we grant defendants' motion to dismiss as to the State of Vermont because the Eleventh Amendment deprives this court of jurisdiction to hear an action for damages against the state. *See Ogrod v. Commonwealth of Pennsylvania,* 401 F.Supp. 115 (E.D.Pa.1975), *aff'd,* 544 F.2d 512 (3d Cir.1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977).[7]

short answer is that the complaint asks for injunctive relief only from the State and not the individual defendants. An order restraining members of the state judiciary from proceeding in a manner other than plaintiff asserts is proper would not appear to be appropriate at this time in any event as the underlying action is still ongoing and resort to appellate proceedings subsequent to final judgment has not yet been had. See in this regard *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 354, 20 L.Ed. 646 (1872).

5. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has interpreted the amendment to apply to cases as the present one in which a citizen seeks to sue his own state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). The Court also held that the Amendment applies to claims of unconstitutional behavior by state officials when the state is named as a party and recovery is sought from the state treasury. *Id.* By restricting the jurisdiction of the federal trial courts to hear cases brought against a state by citizens of another state, the Eleventh Amendment embodies the traditional doctrine of sovereign immunity for purposes of suits in federal court. The mere presence of a constitutional claim does not affect the immunity of the state.

6. In addition, we note that a waiver of immunity from suit in the state courts does not automatically constitute a waiver of immunity for purposes of the Eleventh Amendment. *Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). Even if the alleged insurance policy and the defense and indemnity statutes have some effect on the immunity of Vermont from suit in its own courts, these measures certainly fall short of a clear statement of the intention of Vermont to subject itself to suit in federal court. *See Linkenhoker v. Weinberger,* 529 F.2d 51 (4th Cir.1975); *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.1971).

7. In his complaint "[t]he plaintiff requests this Court to enjoin the State of Vermont from proceeding in any Court action against the Plaintiff in violation of the Plaintiffs [sic] rights, privileges and immunities under the U.S. Constitution and the laws of the U.S., under color of law and by custom and usage, contrary to law." Although the injunctive relief sought is prospective and hence not barred as such by the Eleventh Amendment the request is meaningless and incapable of enforcement. The state courts are inherently charged with properly administering and interpreting the law and when they fail to do so, whether under the Constitution or otherwise, the remedy is an appeal to the appropriate appellate tribunal or tribunals. A prospective order of a Federal Court under the circumstances of this case di-

## C. Plaintiff's Claims Against Attorneys Langrock and Morgan

■ In considering defendants' motion to dismiss as to defendants Langrock and Morgan, attorneys representing plaintiff and Frances respectively in the divorce proceedings, we advance for the first time past the threshold barriers of judicial and sovereign immunity to the question of whether the allegations of the complaint amount to a viable claim under section 1983 against certain participants in the divorce proceedings. In order to prevail in a section 1983 action, the plaintiff must satisfy two requirements.

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970) (footnote omitted). Assuming for purposes of this motion that the plaintiff has satisfied the first element, the deprivation of a constitutional right, we hold that he cannot as a matter of law satisfy the second element because he has not alleged that Langrock and Morgan engaged in unlawful behavior which qualifies as state action for purposes of section 1983.

■ although litigants invoke section 1983 most commonly in suits against state officials and employees, a private citizen may also be liable for a constitutional tort if he was a "willful participant in joint activity with the State or its agents." *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (footnote omitted).[8] Plaintiff in this case alleges that attorneys Langrock and Morgan "acted in concert" with the other defendants including the state judges, but the complaint is devoid of any allegation setting out an act of conspiracy or indeed of active cooperation between Langrock and Morgan and the other defendants beyond their participation as attorneys on opposite sides of the divorce proceedings. The court recognizes its obligation to read the complaint of a *pro se* litigant liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) *(per curiam); Hohman v. Hogan,* 597 F.2d 490 (2d Cir.1979). We cannot, however, invent and add to the existing pleadings relatively detailed allegations of particular joint activities. In the absence of specific claims of unlawful cooperation with state officials, an attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law.

The case for dismissal may be stronger as to attorney Langrock. According to the complaint, Langrock's sin lies in having failed to take steps "to protect plaintiff Ragosta's rights" while representing plaintiff in the proceedings before Judge Hayes. After Judge Hayes ordered plaintiff to leave the marital home, moreover, "defendant Langrock who knew or should have known better, informed plaintiff Ragosta that this was the manner of administering the law in Vermont and that plaintiff Ragosta had to accept it." Accepting these allegations as true, plaintiff has charged Langrock at best with providing inadequate representation; plaintiff has certainly not alleged facts sufficient to constitute "joint activity" or state action.

In *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975), the plaintiff claimed that his own attorney had participated in the extortion of money from him in the course of a

---

recting a state court to proceed in the manner which it is already bound to do would accomplish no worthwhile purpose whatever.

**8.** In *Price,* the Court construed 18 U.S.C. § 242, the counterpart in the criminal law to section 1983, and observed that " '[u]nder color' of law means the same thing in § 242 that it does in

... 42 U.S.C. § 1983 (1964 ed.)." *Id.* at 794, n. 7, 86 S.Ct. at 1157 n. 7. The Court also noted that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Id.*

criminal prosecution. In the absence of any allegation of "concerted activity" involving the state or one of its agents and the plaintiff's attorney, *id.* at 74, the court held that the claims against the plaintiff's attorney failed to satisfy the state action requirement. Because the plaintiff in this case has not raised any claim of specific unlawful behavior by Langrock undertaken in conscious partnership with state officials, we hold that plaintiff has not stated a claim against Langrock upon which we can grant relief under section 1983.

We also dismiss the claim against attorney Morgan although we recognize that Morgan's case is somewhat different. Morgan in conjunction with his client Frances initiated the divorce action and thereby allegedly "invoked the power of the Courts of Vermont to subject Joseph Ragosta to deprivation of constitutionally protected rights of liberty and property, under color of law and in violation of: (a) Vermont Rules of Civil Procedure, (b) 42 U.S.C. 1983." Complaint, ¶ 9. With the exception of a conclusory allegation that Morgan "acted in concert" with the other defendants, however, the complaint contains no indication that Morgan and the state defendants actually conspired or cooperated in such a way as to make Morgan a participant in a scheme by state employees to deprive plaintiff of his constitutional right. All the complaint really charges is that Morgan filed a conventional action for divorce on behalf of his client, failed to plead sufficient facts to support the action, and sought a customary interim order removing his client's husband from the marital home. Assuming that some aspect of the proceedings initiated by Morgan actually violated the Constitution, the question of Morgan's liability turns on whether a private attorney acting solely at

the direction of a private client satisfies the state action requirement of section 1983 when the attorney makes use of an existing, constitutionally deficient procedure or remedy provided by state law.

As a general rule, "[l]awyers do not act under color of state law solely by engaging in private litigation on behalf of their clients." *Brown v. Chaffee,* 612 F.2d 497, 501 (10th Cir.1979). *See Slotnick v. Garfinkle,* 632 F.2d 163 (1st Cir.1980). The courts have developed two exceptions to this rule: the "joint activity" exception already discussed in connection with plaintiff's claim against Langrock and an exception for malicious violation of an individual's civil rights through the knowing abuse of the legal process. As in the case of Langrock, plaintiff's complaint contains no specific allegations of joint activity involving Morgan and agents or employees of the State of Vermont. Morgan and the defendant judges were at most independent participants in the same divorce action; they were by no stretch of the imagination (or by any liberal reading of the complaint) conspirators or partners in a common scheme to deprive plaintiff of his civil rights.[9]

We hold that the malicious abuse of process exception is not available in this case because we have determined as a matter of law that the filing of the divorce complaint and Morgan's request for interim relief removing plaintiff from the marital home could not have been a *knowing* violation of plaintiff's civil rights. First, we know of no case in which a failure to plead a cause of action with the requisite degree of specificity has risen to the level of a constitutional tort. Plaintiff's remedy if the divorce complaint was inadequate or defective was a motion for a more definite statement pursuant to Vt.R.Civ.P. 12(e), not a separate ac-

**9.** In *Fine v. City of New York,* 529 F.2d 70, 74–75 (2d Cir.1975), the Court of Appeals reversed the dismissal of a section 1983 claim brought by the defendant in a criminal case against an attorney who had represented an individual who would have been the prosecution's chief witness if the criminal matter had gone to trial. The court held that allegations that the witness's attorney accompanied police officers and the witness on an unlawful search

of the criminal defendant's apartment satisfied the state action requirement. Plaintiff in the present case has alleged nothing resembling the degree of involvement by the attorney in allegedly unlawful activity by state officials which led Judge Kaufman to hold in *Fine* that the claim against the attorney—while presenting a close question—alleged sufficient "joint activity" to satisfy the state action requirement.

tion in federal court under section 1983. Second, the type of interim relief sought by Morgan on behalf of his client has been countenanced by the Vermont Supreme Court. *See Condosta v. Condosta,* 136 Vt. 360, 395 A.2d 345 (1978), appeal dismissed for want of a substantial federal question, 440 U.S. 902, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979). *Condosta* may not foreclose a constitutional challenge to the divorce procedures by plaintiff on direct appeal but it allows the inference that Morgan used the allegedly unconstitutional procedures without any knowledge that they might violate plaintiff's civil rights. Even if Morgan knew nothing about the disposition of the *Condosta* case by the Vermont Supreme Court and the summary disposition of the appeal by the United States Supreme Court, the complaint itself alleges that he employed the "long practice, policy, custom and usage of lawyers and the Courts of Vermont" in seeking interim relief.

By contrast, those cases in which lawyers have been held liable under section 1983 involve a question of conscious abuse of legal remedies already held unconstitutional by the appellate courts. Many of these cases involve the use of pre-judgment attachment and garnishment remedies which were declared unconstitutional in the wake of *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) but which remained on the state statute books for the use of the ignorant or unscrupulous. *See, e.g., Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315 (D.N.J.1978) (attorneys liable under section 1983 for filing criminal complaint maliciously and without probable cause); ·*Briere v. Agway, Inc.,* No. 76–41 (D.Vt. April 20, 1978) (order denying defendant attorneys' motion for summary judgment; Vermont pre-judgment attachment statute previously declared unconstitutional). No malicious or knowing violation is present in this case. Whatever constitutional defects may be present in the Vermont divorce procedure— and we do not rule out the possibility that they may exist—have eluded both the Vermont and the United States Supreme Courts. In the absence of any ruling by

any court that the interim relief awarded to Frances was unconstitutional, Morgan was entitled to rely on the long-standing practice of the Vermont courts in seeking the removal of plaintiff from the marital home. Accordingly, we dismiss plaintiff's claims against defendant Glenn Morgan because of plaintiff's failure to allege the requisite state action.

### D. Plaintiff's Claims Against Frances Ragosta

■ We also dismiss this action as to Frances, the sole remaining defendant. The absence of any state action is immediately apparent in her case. The complaint does not charge her with any specific instance of "joint action" involving state employees which would support a section 1983 suit. Plaintiff claims only that Frances and her attorney initiated the divorce action and made use of existing Vermont procedures. Accordingly, plaintiff has failed to state a claim against Frances under section 1983. *See Hill v. McClellan,* 490 F.2d 859 (5th Cir.1974).

### II. Plaintiff's Motion to File Supplemental Complaint

In light of our disposition of plaintiff's claims against the Vermont judges already named as defendants in this action, we deny plaintiff's motion to amend by filing a supplemental complaint. Plaintiff seeks to add two more members of the Vermont bench, Judge Gibson and Judge Mandeville, to his cast of defendants. The proposed amendment charges these two judges with failing to intervene and correct the alleged errors of the other defendant judges and with enforcing the allegedly unconstitutional order of Judge Hayes. Judicial immunity, therefore, will bar the claims against Gibson and Mandeville just as the doctrine bars the claims against the other judges because plaintiff has not alleged that Gibson and Mandeville acted in the clear absence of jurisdiction.

### III. Plaintiff's Motion for a Temporary Restraining Order

Since the court has dismissed the claims against every defendant in this action, we

also deny plaintiff's Motion for a Temporary Restraining Order. This action cannot go forward in the absence of some defendant properly subject to suit under section 1983. Accordingly, no grant of interim relief is possible.

Defendants' Motions to Dismiss the Complaint are granted. Plaintiff's Motion to File a Supplemental Complaint is denied. Plaintiff's Motion for a Temporary Restraining Order is denied. SO ORDERED.